# CV 15 - 2399

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

BERNARD WASHINGTON,

Plaintiff,

-against-

THE CITY OF NEW YORK, THE NEW YORK CITY
POLICE DEPARTMENT, HON. WILLIAM BRATTON,
Commissioner of the New York City Police Department,
POLICE OFFICER JASON REISGERZOG (A Member of
the New York City Police Department, Shield No. 31866
Assigned to the 165 Command on January 30, 2014),
POLICE OFFICERS JOHN DOES Nos. "1" to "10" (Actual
Names Unknown, intended to be the Police Officers
Assigned to the 75th Precinct and/or the 165 Command on
January 30, 2014 Who were Engaged in the Arrest at the
Plaintiff on January 30, 2014), THE NEW YORK CITY
DEPARTMENT OF CORRECTIONS, HON. JOSEPH
PONTE As Commissioner of The New York City
Department of Corrections, Corrections Officers John Does
Nos. "1" to "10" (Actual Names Unknown, intended to be
the Corrections Officers Assigned to Rikers Island who
were engaged in the assignment, placement and supervision
of the Plaintiff on February 2, 2014 while he was in
custody at Rikers Island on February 2, 2014),

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

FILED
CLERK

2015 APR 28  PH 1:02

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

COMPLAINT

Docket No.

THE PLAINTIFF
DEMANDS TRIAL BY
JURY ON ALL ISSUES

VITALIANO, J.

POHORELSKY, M.J.

The Plaintiff, Bernard Washington, by his undersigned attorney, Matthew A. Kaufman,

Esq., does state and say as and for his Complaint:

## JURISDICTION

1.     The jurisdiction of this Court is invoked by the Plaintiff pursuant to Title 28 of the

United States Code, Sections 1331, 1343(3) & (4) and 1367.

2.     Venue is properly laid in the Eastern District of New York under 28 U.S.C.

§1391(b):

     a.     The claim initially arose in this District; and,

     b.     The Plaintiff resides in this District.

## JURY DEMAND

3.     Plaintiff demands a trial by jury on all issues pursuant to the Seventh Amendment to the United States Constitution and Fed. R. Civ. P. 38.

## NATURE OF PROCEEDINGS

4.     This is a proceeding for compensatory and punitive damages owing to the Plaintiff as a result of violations of Civil Rights under the Fourth and Fourteenth Amendments to the Constitution of the United States and under Federal law, particularly Title 42 of the United States Code, Section 1983. Supplemental claims are also asserted against Defendants pursuant to 28 U.S.C. § 1367.

## PARTIES

5.     The Plaintiff, Bernard Washington is a resident of Kings County, City and State of New York.

6.     The Plaintiff, Bernard Washington, at all times material hereto, is a person of African-American descent with dark skin.

7.     Defendant City of New York [hereinafter referred to as "City"]:

     a.     At all times material hereto is a Municipal Corporation, duly formed and created pursuant to the laws and statutes of the State of New York.

     b.     At all times material hereto, Defendant City, by its agents, servants and employees, as well as by Defendant New York City Police Department [hereinafter "NYPD"] was responsible for the training and instruction of individuals employed by the NYPD.

c.     At all times material hereto, by its agents, servants and employees, as well as by the Defendant New York Department of Corrections [hereinafter "DoC"] was responsible for the training and instruction of individuals employed by Defendant DoC.

8.     Defendant William Bratton is the Commissioner of Defendant NYPD [hereinafter referred to as "Bratton"] and is sued here in his representative capacity as the Commissioner of Defendant NYPD.

9.     Defendant Police Officer Jason Reisgerzog, at all times material hereto, is a Police Officer in the employ of Defendants City's and/or NYPD and was assigned shield number 31866 and assigned to the 165th Command [hereinafter referred to as "Reisgerzog"].

10.     Defendant Joseph Ponte  is the Commissioner of Defendant DoC [hereinafter referred to as "Commissioner of DoC"] and is sued here in his representative capacity as the Commissioner of Defendant DoC.

11.     At all times material herein, Defendants Police Officers John Doe Nos. "1" to "10" (Actual Names Unknown, Members of the New York Police Department, Assigned to the 75th Precinct and/or the 165 Command on January 30, 2014 Who were Engaged in the Arrest at the Claimant on Plaintiff on January 30, 2014) are members of the New York City Police Department on or about January 30, 2014.

12.     At all times material herein, Defendant Corrections Officers Nos. "1" to "10" (Actual Names Unknown, intended to be the Corrections Officers Assigned to the Rikers Island, who were engaged in the assignment, placement and supervision of the Plaintiff on February 2, 2014 while he was in custody at Rikers Island on that

date) were duly sworn Corrections Officers of Defendant DoC and were acting

under the supervision of said Department and according to their official duties.

13.     The Plaintiff has complied with all conditions precedent under New York Law:

    a.     On April 29, 2014, the Plaintiff served and filed a Notice of Claim upon
Defendants in full compliance with Section 50-e of the N.Y. General
Municipal Law, **Exhibit "A"**;

    b.     Prior to the commencement of this action at least 30 days have elapsed
since the service of the said Notice of Claim pursuant N.Y. General
Municipal Law § 50-e, and the and the adjustment or payment has been
neglected and/or refused.

    c.     The Supplemental State claims in this action is timely commenced within
one-year and 90-days after the happening of the events herein pursuant to
N.Y. General Municipal Law Section § 50-i.

14.     Defendant Bratton is and was at all times responsible for the policies, practices

and/or customs of Defendant NYPD, a municipal agency of Defendant City.

Defendant Bratton is and was at all times relevant herein, responsible for the

hiring, screening, training, retention, supervision, discipline, counseling and

control of the Police Officers under his command who are or were employed by

Defendants City and NYPD, including the Defendants Police Officers herein. He

is sued in his official capacity as a policy maker.

15.     Defendant Ponte is and was at all times responsible for the policies, practices

and/or customs of Defendant DoC, a municipal agency of Defendant City.

Defendant Ponte is and was at all times relevant herein, responsible for the hiring,

screening, training, retention, supervision, discipline, counseling and control of

the Corrections Officers under his command who are or were employed by

Defendants City and DoC, including the Defendants Corrections Officers herein. He is sued in his official capacity as a policy maker.

16. Defendant City is responsible, *inter alia*, for the management, administration, conduct and supervision of all personnel employed by Defendant NYPD to protect the safety of the public and the property of the public, such as the Plaintiff herein.

17. Defendant City is responsible, *inter alia*, for the management, administration, conduct and supervision of all personnel employed by Defendant DoC to protect the safety of the public and the property of the public, particularly those persons who are confined to the various facilities operated by Defendant DoC, including, but not limited to, Rikers Island and the various facilities located within.

18. At all times material hereto, Defendant City and/or DoC has/have a non-delegable duty to maintain the safety of the prisoners assigned and detained at Rikers Island.

19. Each and every act of Defendants alleged herein was done by Defendants, and each of them as individuals, or through their employees, servants and/or agents, under color and authority of the laws, statutes, ordinances, customs and usages of the State of New York, the United States of America, and under their offices with the City of New York.

20. All of the acts of the individual Defendants alleged herein were done while acting within the scope of their employment by Defendants City and/or NYPD and/or DoC.

21. All of the acts of the individual Defendants alleged herein were done while acting in furtherance of their employment by Defendant City and/or NYPD and/or DoC.

-5-

22.   Hereinafter, Defendants Police Officer "John Does Nos. '1' through '10'" may be collectively referred to as the "Defendant Police Officers."

23.   Hereinafter, Defendants Corrections Officer "John Does Nos. '1' through '10'" may be collectively referred to as the "Defendant Corrections Officers."

## BACKGROUND FACTUAL ALLEGATIONS

24.   At all times material hereto, the Plaintiff, Bernard Washington resided in the County of Kings, City and State of New York.

25.   On or about January 30, 2014, the Plaintiff was a passenger in a vehicle that was parked on Levonia Avenue between Pennsylvania and Sheffield Avenue, Brooklyn, New York [hereinafter referred to as the "vehicle"].

   a.   The Plaintiff was sitting in the rear seat of the vehicle.

   b.   There were three other occupants in the vehicle.

26.   While in the vehicle, Defendant Police Officers approached the Plaintiff's vehicle, and spoke to the driver of the vehicle.

27.   Without warning nor probable cause, Defendant Police Officers opened the door to the driver's side and forcibly removed the driver from the vehicle.

28.   Without warning nor probable cause nor reason, Defendant Reisgerzog and/or Defendant Police Officer John Doe No. "1" opened the door next to the Plaintiff, forcibly grabbed the Plaintiff and violently dragged him out of the vehicle.

29.   Defendant Reisgerzog and/or Defendant Police Officer John Doe No. "1", while grabbing the Plaintiff, forcibly threw the Plaintiff against the vehicle, kicking the Plaintiff and striking him.

30.     After throwing the Plaintiff against the vehicle, Defendant Reisgerzog and/or Defendant Police Officer John Doe No. "1", along with one or more of the other Defendant Police Officers, Defendants John Does Nos. "2" and/or "3", forced the Plaintiff's hands behind his back.

31.     While Defendants were arresting the Plaintiff, Defendant Reisgerzog and/or John Doe No. "4" stated in a loud voice to arrest all the occupants of the vehicle.

32.     Defendant Reisgerzog and/or Defendant John Doe No. "1", in concert and with the assistance with Defendants John Does Nos. "2" and/or "3", placed handcuffs on the Plaintiff in an excessively tight on the Plaintiff in a manner so as to cause the Plaintiff to suffer unnecessary pain and suffering.

33.     The Plaintiff immediately complained to the Defendant Police Officers that the handcuffs were placed too tight on his wrists, which complaint Defendants ignored.

34.     During this time Defendant Reisgerzog and/or John Doe No. "5" put the Plaintiff into a police vehicle and transported him to the 75th Precinct.

35.     The Plaintiff asked the Defendant Police Officers to loosen the hand cuffs while he was being transported to the 75th Precinct, which request was either ignored and/or refused.

36.     At the 75th Precinct, Defendants placed the Plaintiff in a holding cell while keeping the handcuffs excessively tight.

37.     The Plaintiff asked the Defendant Police Officers to loosen the hand cuffs while in the cell at the 75th Precinct, which request was either ignored and/or refused.

38. The Plaintiff's handcuffs were temporarily removed while Defendants searched him at the 75th Precinct, after which, Defendant Police Officers again put the handcuffs back on the Plaintiff.

39. The continued use of the handcuffs in an excessively tight manner continued to cause the Plaintiff pain.

40. As a result of the handcuffs, the Plaintiff's wrists were swelling and he was in pain.

41. The Plaintiff requested medical treatment due to the pain and swelling he was suffering due to the tight handcuffs, which request Defendant Police Officers refused and/or ignored.

42. Defendant Police Officers refused to provide the Plaintiff with medical assistance, which was denied and/or otherwise refused.

43. Upon information and belief, the Defendant Police Officers were unnecessarily hostile, and used unnecessary force against the Plaintiff as a result of his being an African-American.

44. Defendant Police Officers therefore placed the Plaintiff back in handcuffs and transported him to Brooklyn Central Booking.

45. While at Central Booking, the Plaintiff told Defendant Police Officers that he was in pain and needed medical attention. Defendant Police Officers responded to the Plaintiff's request for medical care and treatment that he would have to be re-processed, and his arraignment would be delayed if he sought medical treatment.

46. On January 31, 2014, the Plaintiff was brought to the Criminal Court for the City of New York, Kings County, where he was arraigned and charged with various crimes in violation of the New York Penal Law by a complaint sworn to by Defendant Reisgerzog under Criminal Court Docket number 2014KN007053, **Exhibit "B"** [hereinafter, the "Criminal Court Complaint"].

47. The Criminal Court Complaint contained false and untrue allegations as a pretext to justify the search, arrest and seizure of the Plaintiff along with the three occupants in the vehicle:

    a. Defendant Reisgerzog, personally, or with the assistance of one or more of the Defendant Police Officers, drafted or assisted in drafting a Criminal Complaint against the Plaintiff, as well as the other three occupants of the vehicle.

    b. Defendant Reisgerzog averred and swore to the truth of the Criminal Court Complaint.

    c. Defendant Reisgerzog knew that many of the allegations and statements he made in the Criminal Court Complaint were not true, either in whole or part, but were made so as to justify his conduct and the conduct of his fellow Defendant Officers during their warrantless search, arrest and seizure of the Plaintiff and the other three occupants of the vehicle.

    d. The Plaintiff entered a plea of not guilty to all the charges at the time of his arraignment.

    e. The Court set bail at the time the Plaintiff was arraigned.

    f. The Court adjourned the case against the Plaintiff to February 3, 2014.

    g. The Plaintiff was unable to make bail and remained in the custody of Defendant DoC.

48. Defendant DoC assigned the Plaintiff to Rikers Island jail complex pending his next court appearance.

49. Defendants City and/or DoC did not transport the Plaintiff to Rikers Island after his January 31, 2014 arraignment at the Criminal Court Building in Brooklyn, and detained him in an overcrowded cell in the Criminal Court building.

50. As a result of Defendants' failure to transfer the Plaintiff to Rikers Island from the Criminal Court Building in Brooklyn on January 31, 2014, the Plaintiff was required to sleep on the floor in the holding cells in the basement of the Criminal Court pending.

51. On or about February 1, 2014, Defendant City and/or DoC transferred the Plaintiff to Rikers Island from the Criminal Court building in Brooklyn.

52. At Rikers Island, the Plaintiff was assigned to a dormitory area with numerous other inmates, and assigned a bunk bed for sleeping upon his transfer to Rikers Island [hereinafter, the "dormitory"].

53. Defendants knew, or should have known they were required to exercise reasonable care and diligence over the members of the prison population in the dormitory, including the Plaintiff, which required, among other things, proper constant supervision and surveillance for those who were incarcerated.

54. The Defendants City and/or DoC assigned at least one or more Corrections Officer(s) to supervise the "dormitory," including a Corrections Officer who would be assigned to a desk location, approximately ten beds in front of the Plaintiff's bed location [hereinafter, "the front guard desk"].

55. Upon information and belief, Defendants City and/or DoC maintained Corrections Officers at various posts in the "dormitory" including, but not limited to an officer at the "front guard desk."

56. Defendant Correction Officers John Doe Nos. "1" to "10" were assigned to supervise and guard the dormitory when the Plaintiff was brought into the "dormitory."

57. Defendant Correction Officer John Doe No. "1" was assigned to the "front guard desk" when the Plaintiff was brought into the "dormitory."

58. Defendants acted with deliberate indifference toward the health and safety of Plaintiff during his period of incarceration, by failing to properly supervise and control the safety and decorum of the prison population, including failing to maintain surveillance devices, failing to properly staff assigned posts, as well as other matters.

59. Upon information and belief, Defendants discriminated against the Plaintiff as a result of his being an African-American.

60. During the Plaintiff's period of incarceration at Rikers Island, Defendants individually, and by their servants, agents, and employees, including the Defendant Corrections Officers, allowed unidentified violent offenders who were incarcerated, detained and wearing sneakers at Rikers Island, to congregate within the area of the Plaintiff's area and his bed while assigned to the "dormitory" area on February 2, 2014 [hereinafter referred to as the "Unidentified House Gang Assailants"].

-11-

61.    The "Unidentified House Gang Assailants" threatened to cause bodily harm to the Plaintiff.

62.    Upon information and belief, Defendant Correction Officer John Doe No. "1" had vacated his post and left the "dormitory" location prior to the "Unidentified House Gang Assailants" approached the Plaintiff.

63.    The "Unidentified House Gang Assailants" assaulted and physically battered the Plaintiff, causing the Plaintiff to sustain physical injuries.

64.    The "Unidentified House Gang Assailants" violently and physically attacked and punched the Plaintiff, causing the Plaintiff to fall to floor, dazed and confused.

65.    The "Unidentified House Gang Assailants" continued to attack the Plaintiff until he was rescued by one or more fellow inmates in the local area.

66.    The Plaintiff immediately sought the assistance of Defendant Corrections Officers Nos. "1" to "10" and went to "the front guard desk" for assistance.

67.    The Plaintiff was unable to locate Defendant Correction Officer John Doe No. "1" at "the front guard desk."

68.    The Plaintiff left the vacant "front guard desk" and went to a bathroom past the desk to wash the blood off his face.

69.    After washing his fact, the Plaintiff returned to "the front guard desk," which was still vacant.

70.    The Plaintiff left the vacant "front guard desk" and returned to his bed, still bleeding from the injuries previously inflicted upon him by the "Unidentified House Gang Assailants."

-12-

71. While the Plaintiff was at his bed, Defendant Correction Officer No. "2", upon information and belief, a Correction Officer assigned to the "dormitory," came over the Plaintiff, who was still bleeding from his mouth.

72. Defendant Correction Officer No. "2" brought the Plaintiff to the infirmary at Rikers Island where he received treatment for his injuries.

73. Upon information and belief, the attack by the "Unidentified House Gang Assailants" occurred due to Defendant Corrections Officers John Doe Nos. "1" to "10" having failed to maintain and remain at their stations, and Defendants City and/or DoC having failed to properly supervise the "dormitory."

74. On February 3, 2014, the Plaintiff was brought back to the Criminal Court of the City of New York, Kings County Part APY2.

75. On February 3, 2014, the Court adjourned the Plaintiff's case to February 5, 2014, and the Plaintiff was returned to the custody Defendants City and/or DoC under the same conditions for bail.

76. On February 3, 2014, Defendants brought the Plaintiff back to Rikers Island, but placed him in a different, separate dormitory.

77. On February 5, 2014, the Plaintiff again appeared before the Criminal Court of the City of New York, Kings County, Part AP1F.

    a. On February 5, 2014, the Plaintiff was offered a sentence of "time served" in exchange of his plea of guilty.

    b. The Plaintiff accepted the plea bargain in lieu of his returning to Rikers Island.

c.     On February 5, 2014, the Plaintiff pleaded guilty in exchange for his being released on "time served."

78.    Defendants allowed and permitted the above events and conduct by the "Unidentified House Gang Assailants" to occur, in part and parcel due to the poor training, inexperience and poor hiring polices of Defendants City and/or DoC and/or Ponte.

79.    Upon information and belief, the "Unidentified House Gang Assailants" were incarcerated persons who received favor and special privileges, including favored treatment by Defendants in exchange for provided services provided by these incarcerated persons.

80.    Upon information and belief, Defendants City, DoC and/or the Commissioner knew or should have known they did not have sufficient and proper staffing, along with other necessary items such as video surveillance and training of the staff and employees at the "dormitory" at Rikers Island.

81.    Upon information and belief, prior to the assaults and batteries upon the Plaintiff herein, there existed a pattern and practice of physical abuse of inmates, such as the Plaintiff, by other inmates who were known to Defendants, as well as improper supervision of inmates, within the general population so as to place those inmates physically and emotionally at risk.

82.    Defendants have otherwise failed and refused to implement and take such necessary and appropriate actions to protect inmates such as the Plaintiff, so as to constitute a policy of tolerating and authorizing abuse of inmates.

83.     Upon further information and belief, based on the foregoing, Defendants were not only on notice of the above-complained about conditions, but failed or otherwise refused to take action and otherwise implement proper safety mechanisms, including better training, hiring, and location of prisoners, particularly those at risk, such as the Plaintiff.

### PLAINTIFF'S FIRST CLAIM FOR RELIEF
#### (Violation of Civil Rights, 42 USC § 1983)

84.     Plaintiff repeats and realleges each and every allegation in paragraphs "1" to "83" with the same force and effect as if herein more fully set forth.

85.     All of the above Defendant Police Officers, by their foregoing acts, intentionally and willfully acted jointly and severally under color of law, statute, ordinance, regulations, customs and practice of the State of New York, to deprive the Plaintiff of his rights, privileges and immunities secured to him by the Constitutions and laws of the United States and New York.

86.     All of the aforementioned acts of Defendants, their agents, servants and employees, were carried out under the color of state law.

87.     All of the aforementioned acts deprived the Plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America, in violation of 42 U.S.C. § 1983.

88.     The acts complained of were carried out by the aforementioned individual Defendants in their capacities as Police Officers, with all the actual and/or apparent authority attendant thereto.

-15-

89. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

90. Defendants, collectively and individually, while acting under color of state law, engaged in conduct which constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

91. The acts complained of deprived the Plaintiff of his rights:

    a.    Not to have excessive force imposed upon him;

    b.    Not to have summary punishment imposed upon him;

    c.    Not to be charged with false and inaccurate charges;

    d.    To receive equal protection under the law.

92. The foregoing violations of the Plaintiff's Constitutional rights were undertaken under color of law, statutes, regulations and Constitution of the State of New York.

93. As a result of the foregoing conduct by Defendants herein, the Plaintiff has been damaged in an amount to be determined by this Court, but in no event less than One Million ($1,000,000.00) Dollars compensatory damages and punitive damages in the amount of ONE MILLION ($1,000,000.00) DOLLARS as against the individual defendants.

## PLAINTIFF'S SECOND CLAIM FOR RELIEF
### (Violation of Civil Rights, 42 USC § 1983 - Rikers Island)

94.    Plaintiff repeats and realleges each and every allegation in paragraphs "1" to "83" and "85" to "93" with the same force and effect as if herein more fully set forth.

95.    By reason of the foregoing, Defendants City and/or DoC and/or Defendants Corrections Officers, by failing and improperly allowing the inmates, including the Plaintiff, to be and remain in a the general population without supervision, surveillance or other necessary and proper controls, and by particularly allowing members of the population, such as the "Unidentified House Gang Assailants" to freely roam through the "dormitory" without restriction while the Plaintiff was detained at the "dormitory" deprived the Plaintiff of his rights, remedies, privileges and immunities guaranteed by the Fourteenth Amendment to the U.S. Constitution.

96.    Defendants, including the Defendant Corrections Officers, who by their conduct (or lack of action) under color of state law and within the scope of their employment, willfully and recklessly disregard the Plaintiff's safety, causing him to sustain the damages as alleged herein.

97.    All of the above Defendant Corrections Officers, by their foregoing acts, intentionally and willfully acted jointly and severally under color of law, statute, ordinance, regulations, customs and practice of the State of New York, to deprive the Plaintiff of his rights, privileges and immunities secured to him by the Constitutions and laws of the United States and New York.

-17-

98. All of the aforementioned acts of defendants, their agents, servants and employees, were carried out under the color of state law.

99. As a result of the foregoing conduct by Defendants herein, the Plaintiff has been damaged in an amount to be determined by this Court, but not less than ONE MILLION ($1,000,000.00) DOLLARS and punitive damages in the amount of ONE MILLION ($1,000,000.00) DOLLARS as against the individual defendants.

### PLAINTIFF'S THIRD CLAIM FOR RELIEF
#### (*Monell* Claim Against Defendants City & Bratton)

100. Plaintiff repeats and realleges each and every allegation in paragraphs "1" to "83", "85" to "93" and "95" to "99" with the same force and effect as if herein more fully set forth.

101. Defendants City and/or Bratton was/were obligated to provide rules, regulations and training concerning safe processes and procedures for members of Defendant NYPD in conducting and handling the arrest, including, but limited to the handcuffing of members of the public, including the Plaintiff herein.

102. Defendants City and/or Bratton, as the Defendants responsible for the policies, practices and/or customs of Defendant NYPD, have acted with deliberate indifference to the laws of the State of New York the rights of those who would come into contact with Defendant NYPD in this case by failing to:

    a.    Properly train, screen and supervise;

    b.    Inadequately monitor NYPD Officers in arresting members of the public, including the Plaintiff herein, so as to avoid the use of unnecessary force;

    c.    Require members of Defendant NYPD, including the Defendant Police Officers herein, to not use disparate force and treatment against minority

-18-

members, including persons of African-American descent such as the Plaintiff herein.

103. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

104. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of Defendants City and NYPD all under the supervision of ranking officers of said department.

105. The foregoing customs, policies, usages, practices, procedures and rules of Defendants City and/or NYPD constituted a deliberate indifference to the safety, well-being and constitutional rights of the Plaintiff.

106. The foregoing customs, policies, usages, practices, procedures and rules of Defendants City and/or NYPD were the direct and proximate cause of the constitutional violations suffered by the Plaintiff, as alleged herein.

107. The foregoing customs, policies, usages, practices, procedures and rules of Defendants City and/or NYPD were the moving force behind the constitutional violations suffered by the Plaintiff, as alleged herein.

108. As a result of the foregoing customs, policies, usages, practices, procedures and rules of Defendants City and/or NYPD, the Plaintiff, was subjected to unlawful and excessive force resulting in permanent and disabling injuries.

109.  The individual Defendant Police Officers, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate Police Officers, and were directly responsible for the violation of the Plaintiff's constitutional rights.

110.  The individual Defendant Police Officers, by their conduct, deprived the Plaintiff, of his Federally protected rights, including, but not limited to, the right:

   a.  Not to have excessive force imposed upon him;

   b.  Not to have summary punishment imposed upon him; and,

   c.  To receive equal protection under the law.

111.  As a result of the foregoing, the Plaintiff, sustained, *inter alia*, loss of liberty, emotional distress, embarrassment, humiliation, deprivation of his constitutional rights and is entitled to compensatory and punitive damages in an amount to be determined by trial.

### PLAINTIFF'S FOURTH CLAIM FOR RELIEF
#### (*Monell* Claim Against Defendants City and Ponte)

112.  Plaintiff repeats and realleges each and every allegation in paragraphs "1" to "83", "85" to "93", and "101" to "111" with the same force and effect as if herein more fully set forth.

113.  Defendants City and/or Ponte was/were obligated to provide rules, regulations and training concerning the process and procedure for members of Defendant DoC in the maintenance, care, treatment, supervision and protection of those civilians incarcerated and held in the custody of Defendants City and/or DoC.

114. Defendants City and/or Ponte, as the Defendants responsible for the policies, practices and/or customs of Defendant DoC have acted with deliberate indifference to the laws of the State of New York the rights of those who would come into contact with Defendant DoC in this case by failing to:

    a.    Properly train, screen and supervise;

    b.    Provide sufficient and proper holding facilities, so as to avoid unnecessarily over-crowded, degraded conditions, resulting in persons, such as the Plaintiff, sleeping on the floor of cells;

    c.    Inadequately providing sufficient surveillance, supervision, monitoring of persons detained in custody, from attacks by fellow inmates;

    d.    Require members of Defendant DoC, including the Defendant Corrections Officers herein, to not favorably treat persons detained in Defendants' correctional facilities, including Rikers Island, over other persons, including persons of African-American descent such as the Plaintiff herein.

115. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

116. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of Defendants City and DoC all under the supervision of ranking officers of said department.

117. The foregoing customs, policies, usages, practices, procedures and rules of Defendants City and/or DoC constituted a deliberate indifference to the safety, well-being and constitutional rights of the Plaintiff.

-21-

118. The foregoing customs, policies, usages, practices, procedures and rules of Defendants City and/or DoC were the direct and proximate cause of the constitutional violations suffered by the Plaintiff, as alleged herein.

119. The foregoing customs, policies, usages, practices, procedures and rules of Defendants City and/or DoC were the moving force behind the constitutional violations suffered by the Plaintiff, as alleged herein.

120. As a result of the foregoing customs, policies, usages, practices, procedures and rules of Defendants City and/or DoC the Plaintiff, was subjected to unlawful attack on his person resulting in permanent and disabling injuries.

121. The individual Defendant Corrections Officers, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate Corrections Officers, and were directly responsible for the violation of the Plaintiff's constitutional rights.

122. The individual Defendant Corrections Officers, by their conduct, deprived the Plaintiff, of his Federally protected rights, including, but not limited to, the right:

a. Not to have excessive force imposed upon him;

b. Not to have summary punishment imposed upon him; and,

c. To receive equal protection under the law.

123. As a result of the foregoing, the Plaintiff, sustained, *inter alia*, loss of liberty, emotional distress, embarrassment, humiliation, deprivation of his constitutional rights and is entitled to compensatory and punitive damages in an amount to be determined by trial.

-22-

124. As a result of the foregoing conduct by Defendants herein, the Plaintiff has been damaged in an amount to be determined by this Court, but not less than ONE MILLION ($1,000,000.00) DOLLARS.

### PLAINTIFF'S FIFTH CLAIM FOR RELIEF
#### (First Supplemental Claim Against Municipal Defendants)

125. Plaintiff repeats and realleges each and every allegation in paragraphs "1" to "83", "85" to "93", "101" to "111" and "113" to "124" with the same force and effect as if herein more fully set forth.

126. The Plaintiff asserts Supplemental Jurisdiction over claims arising under New York law, 28 USC § 1367.

127. The Supplemental claims fall within one or more of the exceptions as outlined in New York local law, C.P.L.R. § 1602.

128. Defendants City and/or NYPD by their employees, agents and/or servants were negligent, careless, and otherwise acted with unnecessary and unreasonable force, constituting assault and battery in the arresting and handcuffing of the Plaintiff.

129. As a result of the individual Defendant Police Officers' conduct, the Plaintiff has suffered physical pain and mental anguish, together with shock, fright, apprehension, embarrassment, and humiliation.

130. As a result of Defendants' conduct and negligence, the Plaintiff has been damaged in an amount to be determined by this Court, but not less than ONE MILLION ($1,000,000.00) DOLLARS as against the defendants.

## PLAINTIFF SIXTH CLAIM FOR RELIEF
### (Second Supplemental Claim Against Municipal Defendants)

131.  Plaintiff repeats and realleges each and every allegation in paragraphs "1" to "83", "85" to "93", "101" to "111", "113" to "124" and "126" to "130" with the same force and effect as if herein more fully set forth.

132.  Defendant City and/or DoC, by their employees, agents, and/or servants were negligent, careless, and reckless in failing to properly provide the Plaintiff with a safe location resulting in the Plaintiff being assaulted and battered.

133.  As a result of Defendants' conduct and negligence, the Plaintiff the Plaintiff has been damaged in an amount to be determined by this Court, but not less than ONE MILLION ($1,000,000.00) DOLLARS as against the defendants.

WHEREFORE, Plaintiff respectfully prays this Court for a judgment as follows:

A)  ONE MILLION ($10,000,000.00) DOLLARS compensatory damages on the First, Second, Third, Fourth and Fifth Claims for Relief as against Defendants and that said judgment be jointly and severally on behalf of the Plaintiff;

B)  ONE MILLION ($1,000,000.00) DOLLARS punitive damages on the First Claims for Relief as against Defendant Police Officers, jointly and severally on behalf of the Plaintiff;

C)  ONE MILLION ($1,000,000.00) DOLLARS punitive damages on the First Claims for Relief as against Defendant Corrections Officers, jointly and severally on behalf of the Plaintiff;

-24-

D)      Reasonable attorneys fees pursuant to 42 U.S.C. §§ 1988 in an amount to

be determined by this Court;

as well as costs, fees disbursements.

Dated: New York, N.Y.
        April 27, 2015

                                Yours, etc.,
                                MATTHEW A. KAUFMAN, ESQ.

                                By: Matthew A. Kaufman - (MK 0598)
                                Attorney for Plaintiff
                                225 Broadway - Suite 1606
                                New York, N.Y. 10007
                                Tel. No. (212) 619-2200
                                MAK File No.     15,452.302
                                makaufman01@yahoo.com

# EXHIBIT "A"

THE CITY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**In the Matter of the Claim of**
**BERNARD WASHINGTON,**

                              Claimant,                <u>VERIFIED NOTICE OF CLAIM</u>

            -against-

THE CITY OF NEW YORK, THE NEW YORK CITY
POLICE DEPARTMENT, POLICE OFFICER JOHN
DOES Nos. "1" to "10" (Actual Names Unknown,
intended to be the Police Officers Assigned to the 75th
Precinct on January 30, 2014 Who were Engaged in the
Arrest at the Claimant on January 30, 2014), NYC
DEPARTMENT OF CORRECTIONS,

                              Respondents.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

TO:    **THE COMPTROLLER OF THE CITY OF NEW YORK, THE NEW YORK CITY**
        **POLICE DEPARTMENT, POLICE OFFICERS JOHN DOES Nos. "1" to "10";**
        **NYC DEPARTMENT OF CORRECTIONS:**

**PLEASE TAKE NOTICE,**

    **THAT,** the undersigned Claimant, BERNARD WASHINGTON hereby makes claim
against:

THE CITY OF NEW YORK, THE NEW YORK CITY POLICE DEPARTMENT,
POLICE OFFICERS JOHN DOES Nos. "1" to "10" (Actual Names Unknown, intended
to be the Police Officers Assigned to the 75th Precinct on January 30, 2014 Who Were
Engaged in the Arrest at the Claimant on January 30, 2014)

1.    **Name and post-office address of the claimants and their attorneys are as follows:**

    BERNARD WASHINGTON          MATTHEW A. KAUFMAN, ESQ.
    55 Malta Street - Apt. 4B            Attorney for Claimant
    Brooklyn, New York 11207           225 Broadway - Suite 1606
                                   New York, N.Y. 10007
                                   Tel. No. (212) 619-2200
                                   File No.     15,452.302

2014 APR 29   PM 4: 22
CITY OF N.Y. LAW DEPT.
OFFICE OF CORP. COUNSEL
COMMUNICATIONS UNIT
CITY

2014 APR 29   PM 4: 22
CITY OF N.Y. LAW DEPT.
OFFICE OF CORP. COUNSEL
COMMUNICATIONS UNIT
NYPD

2014 APR 29   PM 4: 23
CITY OF N.Y. LAW DEPT.
OFFICE OF CORP. COUNSEL
COMMUNICATIONS UNIT
DoC

2. **Nature of the Claim:**

Claim for excessive force during arrest on January 30, 2014 at or about 8:00 p.m., and thereafter subjecting the Claimant to a dangerous situation resulting in his being attacked at Riker's Island on February 2, 2014, at or between 1:100 a.m. and 2:00 a.m. by an unknown prisoner who Respondents knew, or should have known, was a dangerous person.

Respondent City and NYPD, through its agents, servants and/or employees, used excessive force in the arrest of the Claimant on January 30, 2014. That said conduct was unlawful in violation of his Civil and Constitutional Rights under the 4th and 14th Amendment to the United States Constitution and New York Constitution.

Respondent City Department of Corrections, through its agents, servants and/or employees, failed to provide the Claimant with a safe conditions by exposing him to a condition and individual known to be dangerous at Riker's Island. That said conduct was unlawful in violation of his Civil and Constitutional Rights under the 4th and 14th Amendment to the United States Constitution and New York Constitution.

Respondent City employees, agents and/or servants all acted as police officers within the employ of Respondent City under color of law, and in wanton and reckless disregard of the Claimant's Constitutional and Civil rights, including the freedom from the use of excessive and unnecessary force as guaranteed by the Constitution of the State of New York and the United States Constitution.

Respondents CITY failed to properly train Police Officers John Does Numbers "1" to "10" on proper police procedures, including how to conduct arrests. Respondents CITY failed to properly train its Corrections Officers John Does Numbers "1" to "10" on proper procedures, including how to provide a safe system for those incarcerated.

3. **The time when, the place where and the manner in which the claim arose were as follows:**

The Claim for the excessive force arose on January 30, 2014 at or about 8:00 p.m. on Levonia Avenue between Pennsylvania and Sheffield Avenue, Brooklyn, New York. At the aforementioned time and place, the Claimant was in the rear-passenger seat behind the driver in a parked car when Respondents arrested him. At said time, Respondents use excessive and unnecessary force, causing injuries to the Claimant.

The Claim for the unsafe and improper conditions occurred on February 2, 2014 at and between 1:00 and 2:00 a.m., when the Claimant arrived at the New Admission Dormitory [upon information designated "4 North"] at Riker's Island, New York City on that day. At that time, there was an individual Respondents knew, or should have known, was dangerous, and who attacked Claimant without cause or justification, causing serious and permanent injuries.

4.    **The items of damage or injuries claimed are (including dollar amounts):**

The Claimant, BERNARD WASHINGTON suffered damages as a result of Respondents' conduct as follows:

**TOTAL AMOUNT CLAIMED:**
**January 30, 2014 Incident   ONE HUNDRED THOUSAND ($100,000.00) DOLLARS;**

**February 2, 2014 Incident   ONE MILLION ($1,000,000.00) DOLLARS;**

Dated: New York, New York
        April 29, 2014

                            Yours, etc.,
                            MATTHEW A. KAUFMAN, ESQ.

                            By:    Matthew A. Kaufman
                            Attorney for Claimant
                            225 Broadway - Suite 1606
                            New York, NY 10007
                            Tel. No. (212) 619-2200
                            My File No.   15,452.302

# VERIFICATION

| | |
|---|---|
| STATE OF NEW YORK | ) |
| | : SS.: |
| COUNTY OF NEW YORK | ) |

**BERNARD WASHINGTON,** being duly sworn, depose and say:

I am Claimant herein, I have read the foregoing Notice of Claim and know the contents

thereof; and the same are true to my own knowledge, except as to the matters therein stated to be

alleged upon information and belief, and as to those matters I believe it to be true.

BERNARD WASHINGTON

Sworn to before me the

_____ day of _____, 2014

Notary Public

MATTHEW A. KAUFMAN
Notary Public, State of New Yor
No. 02KA4723415
Qualified in Kings County
Commission Expires 12/3

# EXHIBIT "B"

CRIMINAL COURT OF THE CITY OF NEW YORK
PART APAR COUNTY OF KINGS

STATE OF NEW YORK
COUNTY OF KINGS

THE PEOPLE OF THE STATE OF NEW YORK

v

BERNARD WASHINGTON

POLICE OFFICER JASON REISGERZOG SHIELD NO.31866, OF 165 COMMAND SAYS THAT ON OR
ABOUT JANUARY 30,2014 AT APPROXIMATELY 09:09 PM AT 620 LIVONIA AVENUE COUNTY OF
KINGS, STATE OF NEW YORK,

THE DEFENDANT COMMITTED THE OFFENSE(S) OF:

| PL 220.16(1) | CRIMINAL POSSESSION OF A CONTROLLED SUBSTANCE IN THE THIRD DEGREE (DQO) |
| PL 220.09(1) | CRIMINAL POSSESSION OF A CONTROLLED SUBSTANCE IN THE FOURTH DEGREE (DQO) |
| PL 220.06(2) | CRIMINAL POSSESSION OF A CONTROLLED SUBSTANCE IN THE FIFTH DEGREE (DQO) |
| PL 220.03 | CRIMINAL POSSESSION OF A CONTROLLED SUBSTANCE IN THE SEVENTH DEGREE |
| PL 265.01(1) | CRIMINAL POSSESSION OF A WEAPON IN THE FOURTH DEGREE |
| PL 221.10(1) | CRIMINAL POSSESSION OF MARIHUANA IN THE FIFTH DEGREE |
| PL 221.05 | UNLAWFUL POSSESSION OF MARIHUANA |

IN THAT THE DEFENDANT DID:

KNOWINGLY AND UNLAWFULLY POSSESS A CONTROLLED SUBSTANCE; KNOWINGLY AND
UNLAWFULLY POSSESS ONE OR MORE PREPARATIONS, COMPOUNDS, MIXTURES OR SUBSTANCES
CONTAINING A NARCOTIC PREPARATION AND SAID PREPARATIONS, COMPOUNDS, MIXTURES OR
SUBSTANCES WERE OF AN AGGREGATE WEIGHT OF ONE-HALF OUNCE OR MORE; KNOWINGLY AND
UNLAWFULLY POSSESS ONE OR MORE PREPARATIONS, COMPOUNDS, MIXTURES OR SUBSTANCES
CONTAINING A NARCOTIC DRUG AND SAID PREPARATIONS, COMPOUNDS, MIXTURES OR
SUBSTANCES WERE OF AN AGGREGATE WEIGHT OF ONE-EIGHTH OUNCE OR MORE; KNOWINGLY
AND UNLAWFULLY POSSESS A NARCOTIC DRUG WITH INTENT TO SELL IT; KNOWINGLY AND
UNLAWFULLY POSSESS MARIHUANA; KNOWINGLY AND UNLAWFULLY POSSESS MARIHUANA IN A
PUBLIC PLACE, AS DEFINED IN PENAL LAW SECTION 240.00, AND SUCH MARIHUANA IS
BURNING OR OPEN TO PUBLIC VIEW; POSSESS ANY FIREARM, ELECTRONIC DART GUN,
ELECTRONIC STUN GUN, GRAVITY KNIFE, SWITCHBLADE KNIFE, PILUM BALLISTIC KNIFE,
METAL KNUCKLE KNIFE, CANE SWORD, BILLY, BLACKJACK, BLUDGEON, PLASTIC KNUCKLES,
METAL KNUCKLES, CHUKA STICK, SAND BAG, SANDCLUB, WRIST-BRACE TYPE SLINGSHOT OR
SLUNGSHOT, SHIRKEN OR KUNG FU STAR.

THE SOURCE OF DEPONENT'S INFORMATION AND THE GROUNDS FOR DEPONENT'S BELIEF ARE
AS FOLLOWS:

THE DEPONENT STATES THAT, AT THE ABOVE TIME AND PLACE, WHICH WAS PUBLIC,
DEPONENT OBSERVED THE DEFENDANT IN POSSESSION OF A QUANTITY OF MARIHUANA THAT
WAS VISIBLE TO PASSERS-BY IN THAT THE DEPONENT DID RECOVER A QUANTITY OF
MARIHUANA FROM THE CUP HOLDER OF THE GREY FORD EDGE MAINE LICENSE PLATE NUMBER
7627TR IN WHICH DEFENDANT WAS SEATED WITH APPREHENDED OTHERS SMALL, IYASSU
(K14608721); ADOLPHE, IAN (K14608710); ADOLPHE, KORDGA (K14608729); AND
WASHINGTON, BERNARD (K14608175); AND IN THAT DEPONENT DID ALSO RECOVER ONE CIGAR
OF MARIHUANA FROM THE FRONT PASSENGER SIDE FLOOR OF THE ABOVE-MENTIONED VEHICLE,
AND DEPONENT OBSERVED THE DEFENDANT IN POSSESSION OF A QUANTITY OF CRACK COCAINE
AND CUTTING AGENT IN THAT DEPONENT RECOVERED ONE PLASTIC BAG CONTAINING TWO
ZIPLOCK BAGS, ONE OF WHICH CONTAINED 3/4 OUNCE CRACK COCAINE AND THE OTHER OF
WHICH CONTAINED A CUTTING AGENT; AND DEPONENT DID ALSO OBSERVE THE DEFENDANT IN
POSSESSION OF A GRAVITY KNIFE IN THAT DEPONENT RECOVERED A GRAVITY KNIFE FROM
DEFENDANT'S PERSON.

DEPONENT FURTHER STATES THAT INFORMANT OPENED SAID KNIFE AND SAID KNIFE LOCKED
INTO PLACE THROUGH CENTRIFUGAL FORCE.

Printed 01/31/2014 18:58    K14608715    Arrested 01/30/2014 21:14

2014KN007053

DEPONENT FURTHER STATES THAT THE DEPONENT HAS HAD PROFESSIONAL TRAINING AS A POLICE OFFICER IN THE IDENTIFICATION OF MARIHUANA AND COCAINE, HAS PREVIOUSLY MADE ARRESTS FOR THE CRIMINAL POSSESSION OF MARIHUANA, HAS PREVIOUSLY SEIZED MARIHUANA, WHICH WAS DETERMINED TO BE SUCH BY A CHEMICAL ANALYSIS BY THE POLICE DEPARTMENT LABORATORY, AND THE SUBSTANCE IN THIS CASE POSSESSES THE SAME PHYSICAL CHARACTERISTICS AS SUCH PREVIOUSLY CHEMICALLY IDENTIFIED SUBSTANCE AND BY PROFESSIONAL TRAINING AND EXPERIENCE AS A POLICE OFFICER, IS FAMILIAR WITH COMMON METHODS OF PACKAGING MARIHUANA AND THE ZIPLOCK BAGS AND CIGAR WRAPPER USED TO PACKAGE THE SUBSTANCES IN THIS CASE ARE COMMONLY USED METHODS OF PACKAGING SUCH SUBSTANCES, AND THAT A FIELD TEST WAS PERFORMED CONFIRMING THAT THE RECOVERED SUBSTANCE IS, IN FACT, MARIHUANA.

BASED ON THE FOREGOING, IN DEPONENT'S OPINION, THE SUBSTANCES ARE THIS CASE IS MARIHUANA AND COCAINE.

FALSE STATEMENTS MADE IN THIS DOCUMENT ARE
PUNISHABLE AS A CLASS A MISDEMEANOR PURSUANT
TO SECTION 210.45 OF THE PENAL LAW.

01/31/14              P.O. R̶i̶z̶z̶o̶
DATE                    SIGNATURE